UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
(WESTERN DIVISION - LOS ANGELES)


PRIESTLEY FAUCETT,                )   CASE NO: 2:22-cv-04948-ODW-AS
                                  )
              Plaintiff,          )            CIVIL
                                  )
     vs.                          )   Los Angeles, California
                                  )
MOVE, INC,                        )   Thursday, August 14, 2025
                                  )
              Defendant.          )   (10:02 a.m. to 10:30 a.m.)


HEARING RE:

MOTION TO COMPEL [ECF.NO.129]

BEFORE THE HONORABLE ALKA SAGAR,
UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

For Plaintiff:              CHRISTOPHER GOLD, ESQ.
                           350 Lincoln Road, 2nd Floor
                           Miami Beach, FL 33139

For Defendant:             ROBERT E. ALLEN, ESQ.
                           Quinn Emanuel Urquhart & Sullivan
                           865 S. Figueroa St., 10th Floor
                           Los Angeles, CA 90017


Court Reporter:            Recorded; CourtSmart

Courtroom Deputy:          Alma Felix

Transcribed by:            Exceptional Reporting Services, Inc.
                           P.O. Box 8365
                           Corpus Christi, TX 78468
                           361 949-2988


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

1      **Los Angeles, California; Thursday, August 14, 2025; 10:02 a.m.**

2                              **(Call to Order)**

3            **THE CLERK:**  Calling Case Number CV 22-4948-ODW-ASx,

4      *Priestley Faucett versus Move, Inc.*

5            Beginning with Plaintiff's counsel, please state your

6      appearance for the record.

7            **MR. GOLD:**  Good morning, Your Honor.  This is

8      Attorney Christopher Gold on behalf of the plaintiff, Priestley

9      Faucett.

10           **THE COURT:**  Good morning.

11           **MR. ALLEN:**  Good morning, Your Honor.  Robert Allen

12     from Quinn Emanuel on behalf of Defendant Move, Inc.

13           **THE COURT:**  Okay.  Good morning.

14           This is the hearing on the Defendant's Motion to

15     Compel Discovery Responses from the plaintiff.  The motion was

16     filed on July 21st, 2025 at Docket 129 and then Defendant filed

17     a supplement in support of its motion on July 31st, 2025 at

18     Docket 136.

19           Was anything else filed in connection with this

20     motion other than what I've stated?

21           **MR. GOLD:**  No.

22           **MR. ALLEN:**  I don't believe so, Your Honor.

23           **THE COURT:**  All right.  So let me just give you my

24     preliminary thoughts.

25           Plaintiff argues that in opposing the motion

3

1    Plaintiff claims -- I think the argument that you're making,

2    Mr. Gold, is one that goes to the merits of the case.  You're

3    saying that the defendant, it's their obligation to prove that

4    they didn't get expressed written consent from the plaintiff to

5    make these calls and that's their burden and they're not

6    entitled to anything more than what they've asked for.  And

7    because it's their burden to prove their affirmative defense,

8    somehow that absolves Plaintiff from having to respond to their

9    discovery.

10          And then you also in response to the discovery claim

11   that assert that Plaintiff doesn't have any responsive

12   documents.

13          But I think Defendants have made -- so as to the

14   first point, arguing the merits of the case is not appropriate

15   in responding to your position regarding discovery responses.

16   This is your case.  You have filed it, you have the burden of

17   proving the allegations that you have asserted in your

18   complaint.  And part of your obligation as a plaintiff is to

19   respond to discovery responses that seek information that is

20   relevant and proportionate to this case.

21          And I don't see anything in what Defendants have

22   requested that is sort of outside the realm of what is relevant

23   and appropriate in this case.  I mean their requests are very

24   specific and so your objections to these requests being

25   harassing or overbroad are not well taken because I don't see I

4

1    think they've established that they need this information in

2    order to prove that your that the plaintiff actually did

3    consent to having these calls made.

4           And with respect to if your position is that you

5    don't have any responsive records, that you don't have the

6    recordings of the voicemails that are sort of set forth in your

7    complaint, that you don't have records of all your

8    conversations with the real estate agent, Roberts, then I think

9    they're entitled to the inspection that they want of your

10   client's computer and telephone to determine where these

11   documents are, when they were created and the access that

12   Plaintiff had to their website and other realty websites that

13   the plaintiff in his deposition says he can't remember

14   accessing.

15          So I think the motion is well taken.  I think a lot

16   of time was unnecessarily spent on this discovery dispute.  I

17   wonder whether the parties discussed maybe bringing this to the

18   Court's attention through the informal discovery dispute

19   resolution process because we could have sort of resolved this

20   very efficiently with a telephonic conference right after the

21   dispute arose.  Did you discuss that at all?

22          **MR. ALLEN:**  I don't know if you recall discussing IDC

23   procedures specifically.

24          **MR. GOLD:**  Your Honor, this is Christopher Gold.

25   There was some preliminary reference to that procedure but the

5

1   parties were in the middle of class certification briefing so

2   I'm not sure if there was a dis-alignment in communication but

3   it went -- we ended up being presented with this formal motion.

4           So we began the communications for informal but

5   somehow at some point they shifted without I think

6   unintentionally or --

7           **THE COURT:**  Okay.

8           **MR. GOLD:**  -- maybe intentionally but without much

9   discussion.

10          **THE COURT:**  All right.  Well, if you have discovery

11  disputes going forward, I am going to require you to explore at

12  least bring them to the Court's attention through the informal

13  discovery dispute process.  And then if the Court finds based

14  on the nature of the dispute that it needs formal briefing then

15  I will order that formal briefing.  And normally that's for

16  situations where there's like a privilege assertion or

17  something where I need more extensive briefing but the vast

18  majority of these discovery issues can be handled in a much

19  more timely manner through the informal discovery dispute

20  process and then that lets you move forward and focus on the

21  case.

22          So I'll hear from you, Mr. Gold, but my tentative is

23  to go ahead and grant the motion.  And then I think what we

24  need to talk about is sort of the parameters of that, what the

25  inspection is going to -- what it's going to involve and then

6

1    timing.

2           With respect to your any objections that you have

3    regarding privacy concerns, I think a protective order can

4    assure that any information that is -- bleeds from an

5    inspection that is not relevant can be withheld -- can be

6    subject to a protective order so that your client's privacy

7    concerns are addressed.  Okay?

8           I'll hear from you if you want to address the merits

9    of the motion.

10           **MR. GOLD:**  Yes, thank you, Your Honor.  So I guess

11    I'll just go in the order that Your Honor stated it.

12           So to the extent there's any kind of merits,

13    referencing merits arguments, it wasn't meant to -- I

14    understand that a parties' merits arguments don't define the

15    scope of discovery.  It was merely offered to demonstrate that

16    the defendant's documents that the defendant are seeking, to

17    the extent they haven't been produced, are not relevant.

18           So this is a case where -- to the extent it wasn't

19    clear in the briefing -- Plaintiff has fully cooperated in

20    discovery.  He sat for a full deposition.  He responded to all

21    the requests for production of documents, responded to all the

22    interrogatories, responded to all the requests for admission.

23    He even amended his responses to the requests for admission

24    twice at Move's insistence and that's actually relevant to what

25    Your Honor said about an inspection and the defendant needing

1   to know whether he accessed the website.

2          It's true that in the deposition the plaintiff didn't

3   remember whether or not he accessed it but following that

4   deposition the defendant served these requests for admission,

5   asking us to admit whether the plaintiff visited it.  They

6   didn't like the first response so we amended it.  They didn't

7   like the second one so we have a second amended RFA responses

8   which state we don't -- we admit -- we admit the plaintiff went

9   to those websites because at the end of the day, it's not

10  relevant whether or not the plaintiff -- from Plaintiff's -- to

11  show that Plaintiff went to the website.

12         The only thing that Defendant has to prove in support

13  of its affirmative defense of prior expressed written consent

14  is what Judge Wright wrote in his motion to dismiss years ago

15  when -- his order denying the motion to dismiss years ago --

16  and that is written evidence of -- it's prior, first of all, so

17  it has to be prior to the cause at issue and it's a written,

18  signed document showing consent to receive calls from Move

19  specifically using a prerecorded voice specifically.  So that

20  is a very specific thing.

21         So we admitted he went to the website.  Defendant

22  actually obtained from that website the screenshot and the

23  evidence of whatever Plaintiff consented to that Defendant is

24  relying on as evidence of consent.  Defendant submitted that in

25  its opposition to our motion for class certification.  So

8

1    evidence of consent, whatever evidence exists, is already in

2    the record, it's already being decided right now.  It's under

3    submission by Judge Wright.

4         So what they're looking for here are documents that

5    just don't exist.  We produced every document we have and we

6    told them we are not withholding anything.  And then just based

7    on nothing more than pure suspicion that other documents must

8    exist, they want to do a forensic examination.  And if that

9    were the case then a forensic examination would be the default

10   rule.  Anytime a party says, okay, I have no responsive

11   documents then we would just jump to a forensic inspection.

12        But the forensic -- you know, what they're seeking in

13   the forensic inspection is so voicemail recordings.  The

14   defendant already produced to us all of the voicemail

15   recordings at issue.  And the plaintiff produced all voicemail

16   recordings that he has in his phone.  His phone -- remember,

17   this is back in 2022.  His phone is a Google device I believe

18   so it does upload to the cloud.  He searched -- the cloud only

19   -- it has a maximum limit so it doesn't store everything from

20   back in the day.  But again, it's duplicative.  What are they

21   going to get from a duplicative recording that Plaintiff

22   received of the same recording in their records that they sent

23   to us.  So that's Number One.

24        With the Alicia Roberts communication, we searched

25   for them.  I even had my client search again last night, they

9

1   just don't exist.  The defendant has actually -- has more of

2   that evidence than we have because they had improper ex parte

3   contact with Alicia Roberts during this litigation while she

4   was talking to her client, my client, as her real estate -- as

5   a real estate agent.  And without telling us, throughout the

6   course of this litigation, Move's counsel are having ex parte

7   communications with an agent of the plaintiff --

8           **THE COURT:**  Do you -- do you represent Ms. Roberts?

9           **MR. GOLD:**  -- which under California bar rules is

10  improper ex parte contact.

11          **THE COURT:**  Do you represent Ms. Roberts?

12          **MR. GOLD:**  I'm sorry, did you say --

13          **THE COURT:**  Do you represent her?

14      (No audible response)

15          Do you represent the real estate agent?

16          **MR. GOLD:**  Are you asking me, Your Honor?

17          **THE COURT:**  Yes, I'm asking you.

18          **MR. GOLD:**  No, I do not represent her.

19          **THE COURT:**  And do you know if she's represented by

20  counsel?

21          **MR. GOLD:**  She's not represented by counsel.  So we

22  took her deposition.

23          **THE COURT:**  So why is it inappropriate for Defense

24  Counsel to contact her?  She's a witness.

25          **MR. GOLD:**  Because --

10

1          THE COURT:  She's a witness who's not represented by

2    counsel.

3          MR. GOLD:  Yes, because under California bar rules it

4    states that indirect contact -- it also prohibits indirect

5    contact through an agent.  So she was officially un-agent with

6    fiduciary duties owed to my client.  She had duties of

7    confidentiality, loyalty, all these things so -- and they're

8    having conversations with her while she's talking to my client.

9    We had no idea about this.  They didn't even prod -- they got

10   from her screenshots of the communications.  I didn't even know

11   the communications were happening.  We didn't know about this

12   until their opposition to class certification was filed a year

13   ago and they submitted screenshots of these conversations.  And

14   then -- you know I was surprised to see that.

15         And then we took her deposition fairly recently once

16   this case came back from the Ninth Circuit and I asked her.

17   You know, she produced it to Move's counsel without a subpoena.

18   We did not get any of that.  And then I asked her at the

19   deposition:

20         "Did you produce everything to Move?"

21         She said she did.

22         I said, "Do you still have these records?"

23         She said, "Yes, I do."

24         So the question is my client does not have it, he's

25   not hiding it.  It's Move has it presumably so we would have no

1  reason to hide it so it's not clear what Move is even missing.

2  To the extent Ms. Roberts didn't produce everything, why don't

3  they just go back to Ms. Roberts and say produce the rest of

4  it.  But we certainly don't have it.  And no examination of the

5  plaintiff's phone is going to change that, it just doesn't

6  exist.

7          **THE COURT:**  All right.  Well, with respect to the

8  communications with Ms. Roberts, this isn't an improper -- the

9  Court, anyway, does not find that it's an improper ex parte

10  communication.  She is a witness in this case.  And she was not

11  represented by you or by other counsel and it was perfectly

12  appropriate for Defense Counsel to reach out to her to get

13  information.  She's a non-party witness to this case.  So I

14  don't think that there's any merit to your claim that somehow

15  they were doing an end-run around by contacting her.

16          Now, the fact that she produced her records of

17  communicates with the plaintiff doesn't absolve the plaintiff

18  of the obligation to respond to Defendant's request for

19  communications because the plaintiff may have communications

20  with Ms. Roberts that she doesn't have.  And so your claim

21  that, oh, they're just seeking duplicitous information, you

22  know you're -- that's not -- that's not an appro -- that's not

23  a valid basis for you not to respond.  Now you can say you

24  don't have communications but if you know Defendant believes

25  that those communications exist and that an inspection of your

12

1  client's computer or phone would reveal those communications,

2  they're entitled to that inspection albeit it you know narrowly

3  tailored to relevant records.

4        With respect to your claim about the production of

5  the voicemails that are sort of set forth in your complaint, I

6  think as to that point Defendant is definitely entitled to

7  inspect Plaintiff's computer and phone records to determine the

8  specific calls that are set forth in the complaint that you

9  filed in this case.  And according to the defendant, the

10  voicemail that you produced, that Plaintiff produced was

11  actually a voicemail that Defendant produced, a record of a

12  voicemail that they have.

13        So Defendant's claims that you have sort of

14  identified five voicemail recordings and you've sort of

15  described them in detail in the complaint and they want those

16  recordings.  Obviously Plaintiff had those recordings at the

17  time the complaint was filed.  And so Plaintiff's claim that

18  now they don't have those recordings is a little bit odd

19  because certainly they had them at the time -- he had them at

20  the time the complaint was filed.  So something happened to

21  those recordings if he no longer has access to them but an

22  inspection of his computer or phone would at least be able to

23  determine where those recordings are and what the substance of

24  those recordings are, and whether they've been accurately

25  described in the complaint.

13

1          And then there's the letter that Plaintiff claims he

2    sent to the defendant to stop calling him but there's issues

3    regarding when that letter was created.  And Defendant claims

4    they never got the letter and so an inspection would be

5    instrumental in determining whether that -- when that letter

6    was created, drafted and what the contents of that letter were.

7          So I don't -- I don't really understand why -- I

8    don't really understand why your arguments in response to these

9    discovery requests which are relevant and I think narrowly

10   tailored to what is really at issue in this case, why they

11   shouldn't be granted.

12         Now, I don't have any details about the forensic

13   examination that Defendants are seeking but they claim that it

14   is narrowly tailored to only look for the records that they're

15   seeking and that they will to the extent any other information

16   is obtained, they'll safeguard that information.  It can be you

17   know pursuant -- the entire examination can be pursuant to the

18   protective order and then you can determine what -- what

19   information can be used in this case.  You could meet and

20   confer on that.

21         Do you have any information about how that inspection

22   would take place, Mr. Allen?

23         **MR. ALLEN:**  So if you go to ECF 129-4 -- this is

24   Exhibit C to the Declaration of Robert McGrath -- we had

25   proposed two different forms of protocols to the plaintiff as

14

1   to how we would conduct that examination.  What the judge just

2   described is something that we would be amenable to, certainly

3   in the interest of Plaintiff's privacy, we're happy to conduct

4   the entire examination subject to the protective order.

5           **THE COURT:**  Okay.

6           **MR. ALLEN:**  And we're happy to meet and confer after

7   the fact about how things can be used.

8           **THE COURT:**  All right.

9           **MR. ALLEN:**  But we would recommend either of the

10  proposals in that Exhibit C.

11          **THE COURT:**  Okay.  So I then would just order the

12  parties to meet and confer as to those proposals and come up

13  with -- you know if you can agree to how that examination

14  should be conducted and how Plaintiff's private information or

15  information that's obtained that's not relevant to this case

16  can be appropriately safeguarded.  And I think there's a

17  discovery -- there's a protective order that's been issued in

18  this case.

19          And then also timing, how long it will take to do

20  that inspection --

21          **MR. GOLD:**  Your Honor, I'm sorry to interrupt.  There

22  was a few things that Your Honor said that I was hoping I would

23  get a chance to be heard on.  I think there's a couple things

24  that are not really clear.

25          So just to start off, one thing to the extent it's

1    not clear, my client's phone, he doesn't even have his phone

2    anymore.  It was either lost or broken.  He replaced it through

3    insurance.  We have the insurance documentation for it.  So the

4    phone does not even exist so I mean I don't think examination

5    of the current phone would change anything.  The backups to

6    Google cloud  they -- and after I think he has like 256

7    megabytes or something.  It's not that much or gigabytes I

8    guess.  And that stores text messages, it stores everything.

9    So you're talking about a span of three years.  Those things --

10              **THE COURT:**  Right.  But they're entitled to do the

11    inspection to determine whether that information is on the

12    iCloud.

13              **MR. GOLD:**  Okay, all right.  So and just to be clear,

14    Your Honor, we are not taking the position that anything

15    absolves us of any burden.  We are not objecting to producing

16    anything.  We've produced everything that exists.  All that we

17    simply feel that based on caselaw that we cite in our motion,

18    there are many court decisions stating that the plaintiff's

19    privacy rights.  Even if you go through a privacy protocol,

20    even under a protective order, you know we have to look at

21    proportionality factors.  This is a tremendous invasion.  And

22    the issues, for instance, the letter, we don't even seek to

23    certify a class based on a what's called an internal do-not-

24    call violation.  So the letters in there just like as a

25    background fact.  It's not even an issue that's important to

16

 1   the case.  It's not relevant to any claim or defense so and we

 2   could stipulate -- we could remove reference to the letter.

 3   It's not really part of the case --

 4          **THE COURT:**  Well, if you --

 5          **MR. GOLD:**  -- so the need to inspect the computer --

 6          **THE COURT:**  Right.

 7          **MR. GOLD:**  -- to determine what data was (indisc.),

 8   the proportionality factors just don't -- they don't shake out

 9   when you look at it like that.

10          **THE COURT:**  Regardless of the class certification

11   issue, I'm just looking at what's before me.  And just

12   reviewing the motion that's been filed and your position in it,

13   I just don't find that there is a basis, that your objections

14   have really any merit whatsoever.  If you in the course of

15   discussing the inspection protocol can come to an agreement

16   regarding the letter, you want to withdraw that letter from

17   consideration or whatever, that's fine.  If you reach an

18   agreement on that then they don't need to search for when that

19   letter was created.  But as to the other items that they want

20   to search for, given Plaintiff's claim that he doesn't have any

21   responsive documents and given the -- you know Defendant's

22   assertion that these records exist or did exist at some point,

23   and they're relevant, I think they're entitled to that

24   inspection.  So you can meet and confer regarding how that

25   inspection is going to take place.  Okay?

1          **MR. GOLD:**  Okay.  I mean Defendant hasn't -- it has

2     no basis that it's shared of why it thinks these documents

3     would be on the computer or the phone that doesn't exist

4     anymore.  It's a computer.  They're looking for -- there's no

5     dispute, we stipu -- we answered the RFA saying we went to the

6     website so what is there to be gained by going on the computer

7     and saying, yes, he went on the website.  To us it just seems

8     like they're grasping to get -- find something else to try to

9     avoid class certification, try to avoid ultimate liability in

10    this case.

11          Some of the things they talk about, they talk about

12    needing these things for typicality and adequacy.  Those issues

13    are not going to be a trial.  That's being adjudicated right

14    now by Judge Wright.  Once -- if we get class certification and

15    we get the trial, Move is not going to be able to offer --

16    there's no argument to trial about typicality and adequacy so

17    their points of arguments of relevance --

18          **THE COURT:**  So again, you're arguing whether this

19    information is admissible at trial and that's not before me.

20          **MR. GOLD:**  Oh -- I'm not --

21          **THE COURT:**  That's before Judge Wright.  But what's

22    before me is a discovery request which the Court finds is

23    relevant and proportional.  And so given the plaintiff's

24    response that they don't have any responsive records and

25    there's no declaration from the plaintiff as to what efforts

18

1  have been undertaken to determine the existence of responsive

2  records or what type of search has been -- has taken place, I

3  think they're entitled to an inspection.  So I'm going to grant

4  the motion to compel.

5          **MR. GOLD:**  Okay.  But then that would be the case in

6  every case.  In every single case --

7          **THE COURT:**  No, every --

8          **MR. GOLD:**  -- where a defendant or any party says we

9  don't have it --

10         **THE COURT:**  Every case -- every case is decided on

11  the facts and circumstances of that case.  So it's not the

12  situation where every time somebody says they don't have

13  anything that the other side gets to do an inspection.  But in

14  this case, Defendant has established that these documents that

15  they're seeking -- these records that they're seeking, had to

16  have been in Plaintiff's possession.  And so Plaintiff's claim

17  that they don't have these records -- for whatever reason.

18  Maybe they had them and they're gone or Plaintiff doesn't have

19  the ability to retrieve them, you know, they're entitled to an

20  inspection to determine the specifics of what these records

21  are.  So this is a situation where an inspection is warranted.

22  And it doesn't mean that I would make that order in every case

23  but in this case, given the issues, given the discovery request

24  -- and I think it's very narrowly tailored to these document

25  requests.  Documents for communications with Roberts, documents

1    regarding Plaintiff's plans to invest in real estate, and the

2    defendant's request for Plaintiff's recordings of their

3    conversations with Move.  So with respect to those issues, they

4    are entitled to an inspection given what Plaintiff's response

5    has been to those requests.  Okay?

6           **MR. GOLD:**  Okay, Your Honor.

7           **THE COURT:**  So I'm going to grant the motion to

8    compel.  I'm going to direct the parties to meet and confer

9    regarding the protocol regarding an inspection or come to some

10   agreement as to the parameters of that inspection.  If for

11   example, Plaintiff withdraws the letter and agrees that they're

12   not going to use it at all in their case, then you don't need

13   to do an inspection that would be looking for when that letter

14   was created.  But that'll be subject to an agreement, all

15   right?

16          And then can you meet and confer regarding the timing

17   of that or do you want me to set dates?

18          **MR. GOLD:**  We can meet and confer regarding the

19   timing.  I mean I guess we'll talk the protocol.  I just think

20   -- like plans to acquire real estate, does that mean they get

21   to review emails, review like what's the limit of that?

22          **THE COURT:**  Right.  They get to review documents that

23   would be responsive to that request.

24          If you are unable to agree to the protocol, the two

25   protocols that have been suggested by the defendant, then you

20

1    can submit your own respective versions of a protocol that you

2    would agree to to the Court.  Do it as part of an IDC and then

3    I'll make a decision as to which protocol to order or maybe

4    I'll do a hybrid or something.  So but if you can't agree, then

5    submit your redline versions to the Court.  But do it in the

6    form of an IDC so we can get those resolved sooner, okay?

7            Is there anything else that we need to take up at

8    this time?

9            **MR. GOLD:**  Nothing from the plaintiff, Your Honor.

10           **MR. ALLEN:**  Nothing from the defendant either.  Thank

11   you.

12           **THE COURT:**  All right.  Thank you.  Everybody have a

13   good rest of the day.

14           **MR. ALLEN:**  Thank you.

15           **MR. GOLD:**  Thank you.

16           **THE CLERK:**  Court is adjourned.

17        **(Proceeding adjourned at 10:30 a.m.)**

18

19

20

21

22

23

24

25

## <u>CERTIFICATION</u>

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____                    <u>October 6, 2025</u>

        Signed                                        Dated

*TONI HUDSON, TRANSCRIBER*